**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

M.L.S, a minor, by and by and through his next friend, Dylan Lingerfelt

Petitioner,

v.

Warden, Upstate Evaluation and Development Center; Office Field Director, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; David Venturella, in his official capacity as Acting Director, of U.S. Immigration and Customs Enforcement; MarkWayne Mullin, in his official capacity as United States Secretary of Homeland Security; and Todd Blanche, in his official capacity as the Attorney General of the United States,

Respondents.

Case No. 8:26-cv-4122-RMG

**AMENDED ORDER**

This matter comes before the Court on Petitioner's application for a Temporary Restraining Order (TRO) on a petitioner for a writ of habeas corpus involving a 17 year old young man who fled his native Honduras after his father was murdered and his mother abandoned him. (Dkt. No. 7).

## I. Factual Background

Petitioner presented to United States border officials at the Mexican border as an unaccompanied 13 year old. He was granted Special Immigrant Juvenile Status (SIJS) by the United States Immigration Services following multiple orders by two South Carolina Thirteenth Judicial Circuit Family Court judges awarding South Carolina Department of Social Services (DSS) custody of M.L.S, finding that parental unification was not a viable option, and determining that returning to Honduras was contrary to the best interest of the child and a risk to his life and

safety. SIJS status provides special protections for vulnerable immigrant children and a pathway to citizenship. The obtaining of SIJS status requires satisfying a demanding set of statutory criteria. *Fuentes v. United States Citizenship and Immigration Service*, 184 F.4th 311, 314-15 (4th Cir. 2026).

Petitioner states in his application for a TRO that he was adjudged guilty of an unspecified juvenile offense and was sentenced to a period of incarceration with the South Carolina Department of Juvenile Justice (DJJ) from May 26, 2026 until September 19, 2026, with the release reportedly being advanced because of the Petitioner's good behavior. On July 13, 2026, Immigration and Customs Enforcement (ICE) issued a detainer to DJJ indicating an intention to take Petitioner into custody pursuant to the Larken Riley Act, 8 U.S.C. § 1226(c)(1)(E), which makes convictions by aliens of certain designated crimes subject to mandatory detention.

Petitioner filed his petition on September 18, 2026, one day before the planned date for ICE to take Petitioner into custody. That same day, he filed an application for a TRO and gave Defendants notice of his motion for a TRO. The Government has made an appearance in the case but has not yet had a chance to respond to the habeas petition or the application for a TRO.

Petitioner makes three arguments in support of his application for a TRO. First, he alleges that he is entitled to a meaningful pre-deprivation hearing before he is taken into ICE custody and detained because of special protections accorded unaccompanied children under federal law generally, particularly those with SIJS status. Further, Petitioner argues that ICE's assertion that Petitioner is subject to the mandatory provisions of the Larken Riley Act for a juvenile offense is not consistent with settled principles of immigration law. Second, Petitioner argues that federal law, 8 U.S.C. § 1232(c)(3)(A), requires that unaccompanied children be placed in the "least restrictive environment" consistent with the child's best interests. Petitioner argues that taking

Petitioner away from his present legal custodian, DSS, and into the physical custody of ICE fails to satisfy that requirement.[1] Third, Petitioner argues that the ICE detainer action is inconsistent with the Flores Settlement Agreement, a nationwide class action settlement, which provides that (1) an unaccompanied minor cannot be held with adults for longer than 24 hours, (2) must be placed in the least restrictive facility appropriate for the child's needs, and (3) can only be held in a secure facility only if it meets strict criteria. See, *Flores v. Garland*, 2024 WL 3467715 (C.D. Cal. 2024).

## II. Legal Standard

Rule 65 of the Federal Rules of Civil Procedure provides that the Court may issue a TRO upon the movant's showing of the same four factors required for the issuance of a preliminary injunction: (1) the movant's likelihood of success on the merits, (2) whether the movant will face irreparable harm in the absence of preliminary relief, (3) whether the balance of equities favors preliminary relief, and (4) whether injunctive relief is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006) ("The standard for granting either a TRO or a preliminary injunction is the same.").

## III. Discussion

Based upon the information contained in Petitioner's verified habeas petition and application for habeas relief and the authorities referenced therein, the Court finds that Petitioner is entitled to the issuance of a TRO providing for at least in part the relief requested. Petitioner has shown that he has a likelihood of success on the merits based upon certain facts asserted in the application

---

[1] Petitioner asserts that upon his release from DSS, he would return to the custody of DSS, his South Carolina family court designated custodian.

for a TRO, would face irreparable harm in the absence of preliminary relief, and the equities and public interest tip in his favor. The Court fully appreciates in making this finding that it lacks a full record of this matter and has not had a chance to consider the presentation of the Respondents, which will soon be forthcoming.

The Court hereby grants a TRO on the following terms:

1. The Court assumes jurisdiction over this matter;
2. Respondents are enjoined from transferring Petitioner away from the District of South Carolina until further order of the Court;
3. The Court will maintain jurisdiction over this matter if the Petitioner is ultimately transferred outside the District of South Carolina.
4. Respondent is directed to file a return to the petition within three days of this Order, and a hearing will be conducted on this matter on September 28, 2026 at the J. Waties Waring Federal Judicial Center in Charleston, South Carolina, as further noticed on the case docket;
5. DJJ shall retain Petitioner in its custody until the Court has had the opportunity for the Court to issue an order in this matter, which shall be no longer than 14 days from this Order.[2]

**AND IT IS SO ORDERED.** [3]

---

[22] The Petitioner has not challenged Petitioner's present custody by DJJ under federal law or the Flores Settlement Agreement, and the maintenance of DJJ custody accomplishes the goal of maintaining the status quo pending the Court's ruling on temporary injunctive relief.

[3] Because of the late hour this Order is issued, Petitioner's counsel is directed to immediately reach out to counsel for all Respondents, including DJJ's counsel reference in Petitioner's filings, to confirm compliance with this Order.

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

September 19, 2026
Charleston, South Carolina