IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| M.L.S., a minor, by and through his, Next Friend, Dylan Lingerfelt,<br><br>Petitioner,<br><br>v.<br><br>Warden, Upstate Evaluation and Development Center; Field Office Director, Enforcement and Removal Operations, U.S. Immigration & Customs Enforcement; David Venturella, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; Markwayne Mullins, in his official capacity as U.S. Secretary of Homeland Security; and Todd Blanche, in his official capacity as Attorney General of the United States,<br><br>Respondents. | Case No. 8:26-cv-04122-RMG-WSB |

**FEDERAL RESPONDENTS' OPPOSITION TO PETITIONER'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Respondents Field Office Director, Enforcement and Removal Operations, U.S. Immigration & Customs Enforcement ("ICE"); David Venturella, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; Markwayne Mullins, in his official capacity as U.S. Secretary of Homeland Security; and Todd Blanche, in his official capacity as Attorney General of the United States (hereinafter "Federal Respondents") hereby oppose Petitioner's Application for a Temporary Restraining Order or, in the Alternative, Preliminary Injunction ("Application") (Dkt. No. 2). As described more fully herein, Petitioner is not entitled

to a temporary restraining order ("TRO") because: (1) he is subject to mandatory detention under the Laken Riley Act and/or discretionary detention under 8 U.S.C. § 1226(a); (2) Petitioner's desire to be placed with juveniles, rather than adults, only can be accomplished if he is transferred outside of South Carolina (because no ICE juvenile facilities are located in South Carolina); and (3) there is no evidence that the South Carolina Department of Social Services ("DSS") is prepared to take Petitioner into immediate custody or provide housing for Petitioner, particularly in light of the [redacted] and Petitioner's consistent practice of [redacted].

Therefore, as described more fully herein, Federal Respondents respectfully request that the Court deny Petitioner's Application for a TRO.

## II. <u>BACKGROUND</u>

On February 3, 2025, Petitioner was committed to the custody of DSS. *See* Dkt. No. 1 at ¶ 41.

After entering into DSS custody, from April 19, 2025 through at least May 8, 2025, Petitioner was listed as a [redacted]. *See* Second Supplemental Report [redacted] at 6 of 7, attached to Greenville County Sheriff's Office Incident Report, with incident date May 7, 2025 (Ex. 1). On January 16, 2026, an Aiken County officer reported that [redacted]." *See* Third Supplemental Report [redacted] at 4 of 7, attached to Greenville County Sheriff's Office Incident Report, with incident date January 16, 2026 (Ex. 2). On February 3, 2026, the Clinton Police Department reported that [redacted] *See* First Supplemental Report [redacted]

at 3 of 5, attached to Greenville County Sheriff's Office Incident Report, with incident date February 2, 2026 (Ex. 3).

On July 1, 2026, the Greenville County Family Court entered Commitment Order DJJ (Determinate) Followed by Probation [redacted]. *See* Commitment Order (Ex. 4). On that date, Petitioner [redacted]). *Id.* Each of the [redacted] occurred after Petitioner was [redacted] and while Petitioner was [redacted].

On July 13, 2026, ICE served an Immigration Detainer, Notice of Action, requesting that DJJ notify ICE before releasing Petitioner from DJJ custody. *See* Immigration Detainer (Dkt. No. 5). The Immigration Detainer states that "DHS has determined that probable cause exists that the subject is a removable individual." *Id.* at 1. On Saturday, September 19, 2026, Petitioner was scheduled to be released from DJJ and taken into ICE custody. See Dkt. No. 2 at 2. On Friday, September 18, 2026, this Court ordered that Petitioner would remain at the DJJ facility for the period outlined in the Order (Dkt. No. 9). Consequently, Petitioner has not been removed by ICE from the DJJ facility.

## III. <u>ARGUMENT</u>

### A. <u>ICE Is Authorized to Detain Petitioner Upon His Release from DJJ</u>.

The above-referenced Immigration Detainer identifies two grounds on which DHS seeks to take custody of Petitioner: (1) Petitioner "is subject to the detainer provision of the Laken Riley Act and is required to be effectively and expeditiously taken into custody by DHS pursuant to 8 U.S.C. § 1226(c)(3)"; and (2) Petitioner "otherwise poses a risk to national security, border security, or public safety." *See* Immigration Detainer (Dkt. No. 5). Either ground provides a

sufficient basis for detention. In this case, Petitioner could be detained based on either or both grounds.

**1. Petitioner Is Subject to Mandatory Detention Under the Laken Riley Act.**

Petitioner contends that the Laken Riley Act does not apply to juveniles and, therefore, ICE is not authorized to detain Petitioner under the Laken Riley Act, 8 U.S.C. § 1226(c)(1)(E). *See* Dkt. No. 2 at 2, 10–11. Under the Act, the Attorney General is empowered to take into custody any alien who is inadmissible under certain subsections of 8 U.S.C. § 1182(a) and

> is charged with, arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .

8 U.S.C. § 1226(c)(1)(E). The Laken Riley Act does not require a criminal conviction. *Id.* Rather, it also applies to charges or arrests for "acts" that "constitute the essential elements" of the listed offenses or crimes. *Id.*

Here, Petitioner was [redacted] in the Laken Riley Act. *See* Ex. 4; Kemerling Decl. (Ex. 5) at ¶¶ 11–12. Fundamentally, the provisions of the Laken Riley Act apply to [redacted] and subject him to mandatory detention.

**2. The Laken Riley Act Does Not Carve Out Juveniles from Mandatory Detention.**

Petitioner admits that "the LRA does not explicitly exempt children from its mandatory detention provisions . . . ." Dkt. No. 1 at ¶ 33. Nonetheless, Petitioner relies on one distinguishable district court case from the Eastern District of California to support the argument that the Laken Riley Act does not apply to juveniles. *Id.* at 10 (citing *C.R.J.M. v. Kennedy*, No. 2:26-cv-00742-DJC-EFB, 2026 WL 809940, at *3 (E.D. Cal. Mar. 24, 2026)). In that case, the court was presented

with a juvenile petitioner whose ***delinquency proceedings remained pending***. *See C.R.J.M.*, 2026 WL 809940, at *2. While noting that "findings of juvenile delinquency are not convictions for immigration purposes," the court considered that the juvenile "has not been charged with or arrested for any of the defined offenses within the Laken Riley Act." *Id.* Based on the specific facts of that case, the court found that the mandatory detention provision did not apply. *Id.*

Here, as in *C.R.J.M.*, the [redacted]. *See* Ex. 4. Additionally, "[t]he South Carolina Supreme Court and South Carolina Code clearly distinguish juvenile adjudications in family court from adult convictions in general sessions court." *United States v. Sitton*, 21 F.4th 873, 874 (4th Cir. 2022).

However, in direct contrast to *C.R.J.M.*, the [redacted], [redacted], and Petitioner was [redacted]. *See* Ex. 4; Kemerling Decl. (Ex. 5) at ¶¶ 11–12. [redacted]. *See* Ex. 4. Thus, [redacted] in the Laken Riley Act, making *C.R.J.M.* distinguishable.

Moreover, Petitioner cannot assert that *C.R.J.M.*'s discussion of juvenile adjudications in the context of the Laken Riley Act is a statement of settled law. On the contrary, this area of the law appears both undeveloped and unsettled. To illustrate, the District of Massachusetts determined that

> [h]ad Congress considered the impact of the Laken Riley Act on SIJ status recipients, it may well have carved out mandatory detention for juveniles. But nothing in the statutory language or legislative history suggests that Congress considered the question. Accordingly, the court finds that 8 U.S.C. § 1255(h)(2), which governs applications for adjustment of status, does not exempt Petitioner from removability based on his SIJ status.

*Doe v. Moniz*, 800 F. Supp. 3d 203, 213 (D. Mass. 2025) (discussing Special Immigrant Juvenile ("SIJ") alien classification such as that asserted by the instant Petitioner). This position conflicts with *C.R.J.M.*'s limited analysis that failed to consider the specific statutory language or legislative history.

For these reasons, Petitioner cannot avoid the provisions of the Laken Riley Act and mandatory detention thereunder is appropriate.

**3. Petitioner is Subject to Discretionary Detention Under 8 U.S.C. § 1226(a).**

The Immigration Detainer also states that Petitioner is subject to detention and is removable because he "otherwise poses a risk to national security, border security, or public safety." Dkt. No. 5. Petitioner has been present in the United States for many years. *See* Dkt. No. 1 at ¶ 1 (stating that Petitioner is a 17-year-old Honduran national who has been residing in the United States since the age of 13). Section 1226(a) "sets forth 'the default rule' for detaining and removing noncitizens 'already present in the United States.'" *Juan Francisco Ramos Arias v. Crawford*, No. 3:26CV116 (RCY), 2026 WL 2790106, at *2 (E.D. Va. Sept. 17, 2026) (discussing 8 U.S.C. § 1226(a) and quoting *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018)) (hereinafter "*Arias*"). Section 1226(a) provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

The Fourth Circuit recently determined that "Section 1226(a) properly governs the detention of noncitizens like the Petitioners who are present in the United States, regardless of how they came to be in our country." *Lopez Garcia v. Guadian*, No. 25-7044, No. 25-7050, 2026 WL 2661092, at *20 (4th Cir. Sept. 10, 2026). Like the petitioners in *Lopez Garcia*, the instant Petitioner also is subject to discretionary detention pursuant to Section 1226(a), regardless of whether the Laken Riley Act applies. *See, e.g.*, *Brito-Ramirez v. Kelly*, Civ. A. No. 0:17-463-

TMC-PJG, 2017 WL 1363904, at *2 (D.S.C. Mar, 17, 2017) (noting "[t]he Attorney General may arrest and detain an alien pending a decision on whether the alien is to be removed from the United States . . . [and] [s]uch decisions rest in the discretionary judgment of the Attorney General and are not subject to review by the courts.") (citing 8 U.S.C. § 1226(a), (b), and (e)); *see also Suri v. Trump*, 184 F.4th 260, 310 (4th Cir. 2026) (Wilkinson, C.J., dissenting) (discussing 8 U.S.C. § 1252(a)(2)(B)).

Under Section 1226(a), a "[p]etitioner is entitled to a bond hearing before an Immigration Judge, in which an Immigration Judge must determine whether he poses a danger to the community and whether he is a flight risk." *Arias*, 2026 WL 2790106, at *2 (citing 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1)). "[I]t is the Petitioner, not the Government, who bears the burden under the process established by the Attorney General to demonstrate he is not a danger to the community nor a flight risk." *Lopez Garcia*, 2026 WL 2661092, at *2 n.3 (citing *Miranda v. Garland*, 34 F.4th 338, 356 (4th Cir. 2022)).

Thus, if the Court were to determine that the instant Petitioner is not subject to mandatory detention under the Laken Riley Act, which Federal Defendants expressly dispute, then Petitioner still would be subject to detention under Section 1226(a). Under those circumstances, Petitioner would be entitled to a bond hearing before an Immigration Judge. At this time, because Petitioner is not yet in ICE custody, Petitioner has not presented and cannot present any evidence that there is a significant risk of erroneous deprivation of his due process rights under Section 1226(a).

Further, while the Application avoids discussing Petitioner's [redacted]—[redacted]—[redacted] plus his history [redacted], the facts paint a different picture. *Compare* Dkt. No. 2 at 13 (asserting that Petitioner should be able to "build a life here without risking arbitrary arrest, detention, and removal") *with* Ex. 4 (describing Petitioner's [redacted] including

[redacted]) and Exs. 1–3 (describing Petitioner's history of [redacted]). Thus, Petitioner's reliance on cases involving noncitizens who have [redacted] and [redacted] or [redacted] is unavailing. *See* Ex. No. 2 at 14 (citing *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (discussing a 19-year old "[p]etitioner [who] has [redacted] and indicates that he has attended every check-in and court hearing since he arrived in the United States."); *Garcia Domingo v. Castro*, 806 F. Supp. 3d 1246, 1250 (D. N.M. 2025) (discussing evidence that petitioner was a stable and [redacted] resident, with a family); *Urquilla-Ramos v. Trump*, 821 F. Supp. 3d 603, 631 (S.D. W.Va. 2026) (discussing "[p]etitioner [who] has [redacted] or [redacted] and has been living in the United States since he was a minor, substantially mitigating any asserted [redacted] or [redacted].")).

Some courts have found that SIJ recipients who have never been involved in [redacted] and [redacted] are not subject to detention. *See, e.g.*, *Ramos-Lopez v. Bondi*, No. 1:26-cv-011175-PX, 2026 WL 1745700, at *9 (D. Md. June 17, 2026) (considering SIJ and deferred action recipient who had never been involved in [redacted] and whose removal was not "reasonably foreseeable" such that release was appropriate); *Mira Castro v. Noem*, 819 F. Supp. 3d 211, 216–17 (E.D. N.Y. 2016) (considering SIJ recipient who posed [redacted] and [redacted]."). However, especially considering Petitioner's [redacted], Petitioner's SIJ alien classification should not categorically prohibit detention. Furthermore, Petitioner has not presented any evidence of [redacted] based on SIJ—nor could he. *See* Approval Notice, dated July 6, 2026 (Ex. 6).

**B. <u>Petitioner's Desire to Be Detained Separately From Adults Conflicts with his Plea to Enjoin the Federal Respondents from Transferring Petitioner Outside South Carolina</u>.**

Petitioner emphasizes his concern that he "be detained separately from adults." Dkt. No. 2 at 2. Petitioner offers no evidence that the Federal Respondents were contemplating detaining Petitioner with adults. *See generally id*. Nonetheless, Petitioner cannot remain in South Carolina and be housed in an ICE facility with juveniles ***because no such facility exists***. *See* Kemerling Decl. (Ex. 2) at ¶ 14; *see also* Dkt. No 2 at 15. Because ICE is authorized to detain Petitioner upon his release from DJJ, the proper placement will not be in South Carolina. ICE is "coordinating with the Office of Refugee Resettlement" ("ORR") and "is exploring avenues for juvenile specific detention that will provide the least restrictive setting for the Petitioner pursuant to the settlement in *Flores v. Reno*." *Id.*; *see also https://acf.gov/orr/policy-guidance/unaccompanied-children-program-policy-guide-section-1#1.3.4* (last visited Sept. 21, 2026).

The Federal Respondents assume that Petitioner's concern about adult versus juvenile placement is sincere. The effort to enjoin Federal Respondents from transferring Petitioner outside the District of South Carolina would undermine Petitioner's stated juvenile placement goal. Therefore, the Federal Respondents respectfully submit that such an injunction that would run contrary to Petitioner's stated goal.

**C. <u>There is No Evidence that DSS Is or Should Be Prepared to House Petitioner</u>.**

The Application identifies no evidence that DSS is prepared to take Petitioner into immediate custody or provide housing for Petitioner, particularly in light of [redacted] that [redacted]. *See generally* Dkt. No. 2; *see also* Kemerling Decl. (Ex. 5) at ¶¶ 11–12. Moreover, there is no reason why DSS would have been working to find a place to house Petitioner in a way that takes into account the [redacted] when ICE

notified DJJ on July 13, 2026, that ICE would be taking Petitioner into custody upon his release. *See* Dkt. No. 5.

Thus, while the Application repeatedly references DSS as Petitioner's "legal custodian," this is [redacted]. *See also* Dkt. No. 2 at 1 (noting Petitioner's [redacted]"). Instead, ICE is working to provide the proper placement for Petitioner. *See* Kemerling Decl. (Ex. 5) at ¶¶ 13–14; *see also* 8 U.S.C. § 1231(g)(1) ("The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."). Therefore, the Federal Respondents respectfully submit that releasing Petitioner into the custody of DSS would introduce potential harm to the community and Petitioner, running directly contrary to the public interest.

## III. CONCLUSION

Therefore, Federal Respondents respectfully request that the Court deny Petitioner's Application to issue the requested temporary restraining order.

Respectfully submitted,

BRYAN P. STIRLING
UNITED STATES ATTORNEY

By: *s/Jennifer L. Mallory*
Jennifer L. Mallory (#7435)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, South Carolina 29201
Phone: (803) 929-3102
Email: jennifer.mallory@usdoj.gov

September 21, 2026