**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION**

M.L.S., a minor, by and
through his Next Friend, Dylan Lingerfelt

*Petitioner*,

v.

WARDEN, Upstate Evaluation Center, *et al.*,

*Respondents*.

Case No. 26-cv-4122-RMG-WSB

Honorable Richard Mark Gergel

**REPLY IN FURTHER SUPPORT OF PETITIONER'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION**

Federal Respondents have made it clear that they will violate Petitioner M.L.S.'s due process rights and will not provide him, an unaccompanied child who was previously released from immigration custody, with any process justifying the deprivation of his liberty prior to re-detaining him. Federal Respondents have also made it clear that they have no concrete plans to comply with their duties under the Trafficking Victims Protection Reauthorization Act (TVPRA) or the *Flores* Settlement Agreement, including by promptly transferring M.L.S. to the Office of Refugee Resettlement and ensuring he is not held with unrelated adults for more than 24 hours.

Instead, Federal Respondents double down on their erroneous invocation of the Laken Riley Act (LRA), contradicting clearly established Board of Immigration Appeals (BIA) precedent, federal statutes, and South Carolina law, all of which hold that decisions to take into custody, charges, and juvenile delinquency adjudications of children do not constitute criminal arrests, charges, or convictions and do not trigger immigration consequences under the Immigration and Nationality Act (INA). Contrary to the Federal Respondents' assertions, South

Carolina Department of Social Services (DSS) has legal custody of Petitioner and, as required under South Carolina law, has a placement plan in place for Petitioner, which includes providing safe housing upon M.L.S.'s release from Department of Juvenile Justice (DJJ) custody. This Court should therefore enjoin the Federal Respondents from re-detaining M.L.S. without adequate pre-deprivation process and without compliance with the TVPRA and Flores Settlement Agreement, and order his release to DSS, at least while his habeas petition remains pending.

## UNDISPUTED FACTS

It is undisputed that M.L.S. is a 17-year-old child who entered the United States in 2023 and was designated an unaccompanied child by the Federal Respondents. Dkt. 1, Habeas Pet., ¶¶ 1, 38-39; Dkt. 19-5, Op. Br., Ex. 5 at ¶¶ 5-6. Consistent with the TVPRA, Federal Respondents transferred M.L.S. to the Office of Refugee Resettlement (ORR). Dkt. 6, Habeas Pet., Ex. B; Dkt. 1 at ¶ 40. He was subsequently released from ORR custody to a relative sponsor based on a finding that he did not present a flight risk or danger to the community. *Id.* [redacted] Dkt. 1 at ¶ 41, a South Carolina family court appointed DSS as his legal custodian. Dkt. 1, Ex. C (Sealed Merits Order). DSS continues to hold legal custody of him and will provide M.L.S. with housing upon his release from DJJ. Ex. A, DSS Affidavit.[1] As a minor, M.L.S. was [redacted]. Dkt. 19-4, Op. Br., Ex. 4. M.L.S. was due to be released from DJJ custody into the custody of DSS on September 19, 2026, for good behavior. Ex. B (DJJ Release Form); Dkt. 19-5, Op. Br., Ex. 5 at ¶ 13.

[1] All new exhibits referenced here will be the subject of a contemporaneously filed consent motion to seal.

However, Respondent Immigration and Customs Enforcement (ICE) issued a detainer requesting to take custody of M.L.S. instead. Dkt. 5, Habeas Pet., Ex. A. ICE intended to take him into custody the day of his DJJ release without any pre-deprivation process assessing whether his re-detention is necessary and would constitute placement in the least restrictive setting in his best interests. Dkt. 19, Op. Br. ICE considers M.L.S. subject to mandatory detention under the Laken Riley Act, 8 U.S.C. § 1226(c)(3), or, in the alternative, discretionary detention under 8 U.S.C. § 1226(a). *Id.* As of September 21, 2026, ICE has not secured a placement for M.L.S., confirmed that he will be treated as an unaccompanied child, or confirmed that he will not be held with unrelated adults for more than 24 hours, instead stating only that ICE needs to take custody of M.L.S. before finalizing a "placement determination." Dkt. 19-5, Op. Br., Ex. 5 at ¶ 14.

**I. ICE Cannot Mandatorily Detain M.L.S. Under the Laken Riley Act.**

Respondents effectively ignore the fact that M.L.S. is still a minor and spill much ink describing [redacted] for acts alleged to have occurred while he was also a minor. Respondents aim to distract the Court from what is clear: neither acts nor purported acts of [redacted] trigger the LRA.

The LRA requires detention where a noncitizen is (i) inadmissible on certain grounds and (ii) is "charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements" of specific offenses, as defined by "the jurisdiction in which the act occurred." 8 U.S.C. §§ 1226(c)(1)(E); 1226(c)(2). Other immigration law provisions triggered by criminal conduct include nearly identical language. *See* 8 U.S.C. § 1182(a)(2)(A)(i), (B) (a person is inadmissible who is "convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of" a

"crime involving moral turpitude" or "a violation of (or a conspiracy or attempt to violate) any [federal, state, or foreign] law or regulation . . . relating to a controlled substance" or convicted of "two or more offenses"); 8 U.S.C. § 1227(a)(2)(A), (B) (similar, deportable offenses).

Here, M.L.S. was under eighteen when [redacted] Ex. C, DJJ Legal History. All charged offenses were adjudicated in the South Carolina Family Court, not criminal court. Dkt. 19-4, Opp. Br., Ex. 4 (Commitment Order).[2] Federal, state, and the agency's own law make clear that the LRA does not apply to these juvenile adjudications, charges, or past custody.

First, decades of agency precedent–which Respondents fail to acknowledge or address in their brief– clearly establishes "that findings of juvenile delinquency are not convictions for immigration purposes." *Matter of Devison*, 22 I&N Dec. 1362, 1365 (BIA 2000) (analyzing definition of "conviction" at 8 U.S.C. 1101(a)(48)(A) and reaffirming longstanding precedent that juvenile adjudications do not qualify, citing *Matter of De La Nues*, 18 I&N Dec. 140 (BIA 1981), *Matter of Ramirez-Rivero*, 18 I&N Dec. 135 (BIA 1981), and *Matter of C. M.*, 5 I&N Dec. 27 (BIA 1953)); *see also* USCIS Policy Manual, 7 USCIS-PM F.7(C)(4) ("Findings of juvenile delinquency are not considered criminal convictions for purposes of immigration law."), https://www.uscis.gov/book/export/html/68600 (last accessed September 23, 2026). Further, it cannot be disputed that the Board of Immigration Appeals—which is part of the Department of Justice—is the final word on the interpretation of the INA as they speak for the Attorney

[2] The South Carolina Family Court system has exclusive jurisdiction over criminal offenses allegedly committed by minors under the age of 18. See https://www.sccourts.org/courts/trial-courts/family-court/ (last accessed September 23, 2026).

General. *See* 8 U.S.C. § 1103(a)(1) (stating the "determination and ruling by the Attorney General with respect to all questions of law shall be controlling").

This agency precedent relies on Congress's own recognition that juvenile delinquency adjudications, which are civil in nature, do not focus on guilt or innocence, and do not result in punishment, are not criminal convictions. *Devison*, 22 I&N Dec. at 1366 (citing Federal Juvenile Delinquency Act, 18 U.S.C. § 5031-32, which "makes it clear that a juvenile delinquency proceeding results in the adjudication of a status rather than conviction for a crime"). The agency also looked to relevant state law confirming that juvenile adjudications are not considered crimes. *Id*. Accordingly, the agency confirmed that juvenile adjudications do not trigger statutes using the same "is convicted of" language as the LRA. *Id*. South Carolina law also supports this interpretation. *See* S.C. Code Ann. § 63-19-1410 ("No adjudication by the court of the status of a child is a conviction, nor does the adjudication operate to impose civil disabilities ordinarily resulting from conviction…").[3] Thus, M.L.S.'s [redacted] do not satisfy the LRA's "is convicted of" language.

Second, consistent with this, admitting to juvenile delinquency also does not constitute an "admission" under the INA because the person has to admit *to a crime* and delinquency is not considered a crime under immigration law. In *Matter of M-U-*, 2 I&N Dec. 92 (BIA 1944), the BIA held that an adult cannot admit the essential elements of a moral turpitude offense if the conduct required mandatory delinquency treatment. In that case, an admission by an adult of theft while a minor that resulted in a delinquency adjudication was held not to be an admission of

[3] Respondents' citation to *U.S. v. Sitton*, 21 F.4th 873 (4th Cir. 2022), does not help them. That case involved the narrow issue of whether "under South Carolina law, a juvenile *adjudged guilty in general sessions court* and sentenced pursuant to the South Carolina Youthful Offender Act (the 'YOA') is considered to be convicted as an adult." 21 F.4th at 874 (emphasis added). Here, M.L.S. was adjudicated in South Carolina Family Court and therefore his adjudication is clearly not an adult conviction under both federal and state law.

commission of a crime involving moral turpitude.[4] Thus, M.L.S.'s [redacted] plainly does not trigger the LRA's "admission" language either.

Third, M.L.S.'s [redacted] also do not trigger the LRA. While these specific terms do not appear in other provisions of the INA like "conviction" and "admission," that is because prior to the enactment of the LRA, no provision of the INA penalized noncitizens based solely on an arrest or charge. Regardless, if a person cannot admit to a crime when they are admitting to acts that were or would have been treated as delinquency, *see supra*, an arrest or charge handled in the delinquency system must also be treated by immigration law as distinct from a criminal arrest or charge.

Moreover, in the LRA, the terms "charged with" and "arrested for" modify the terms "offense" and "crime." 8 U.S.C. § 1226(c)(1)(E). These two terms do appear in 8 U.S.C. § 1182(a)(2)(A), (B) and 8 U.S.C. § 1227(a)(2)(A), (B) (inadmissibility and deportability for crimes involving moral turpitude, controlled substance offenses, and "two or more offenses"), and they have long been interpreted to refer only to adult crimes. *See supra*. And critically, under the South Carolina Children's Code, Section 63-19-810, "[w]hen a child found violating a criminal law or ordinance is taken into custody, the taking into custody is not an arrest." *See also In re Stephen W.,* 409 S.C. 73, 79, 761 S.E.2d 231, 234 (2014) ("The very nature of the juvenile system makes clear the family court juvenile adjudication is an inherently different process than a typical criminal prosecution…"). Particularly given that the LRA mandates that the offenses

---

[4] The BIA has also held that an "admission" has only occurred if the noncitizen is first given an explanation of the crime and its essential elements and the admission is given voluntarily. *See Matter of K-*, 7 I&N Dec. 594 (BIA 1957). And it has further held that when a plea of guilty results in something less than a conviction, the plea, on its own, is not tantamount to admission of commission of a crime. *Matter of Seda*, 17 I&N Dec. 550, 554 (BIA 1980). So even when a youth pleads guilty to an offense, any admissions of conduct underlying that guilty plea cannot, without more, be considered to constitute an admission triggering immigration consequences.

listed be interpreted based on state law, it is clear that M.L.S.'s prior history [redacted] also cannot trigger the statute.

Ignoring settled precedent and statutory interpretation, Respondents argue only that the fact that the LRA does not explicitly carve out juvenile acts is dispositive. Opp. at 4-6. This rings flat. As noted *supra*, the term "conviction" used in the LRA is defined in the INA and the agency has repeatedly confirmed it does not include juvenile adjudications. Congress also imported the same "admissions," "crimes," and "offenses" language to the LRA as is identically found in other INA provisions long interpreted not to cover juvenile acts. The identical language in the LRA should therefore be "presumed to carry forward that interpretation." *Texas Dep't of Housing and Community Affairs v. Inclusive Communities Project*, 576 U.S. 519, 536-37 (2015) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 322 (2012)). If Congress meant to upend decades of immigration law precedent with the passage of the LRA, it would have done so explicitly. Indeed, Respondents fail to acknowledge that the only two times that the INA has imposed a mandatory bar based on juvenile delinquency, this was specifically stated in the statute or regulation: see the Adam Walsh Act provisions at 8 U.S.C. § 1152(a)(1)(A)(viii), which includes certain delinquency dispositions as defined at 34 U.S.C. § 20911(8) and the Family Unity inclusion of delinquency dispositions at 8 C.F.R. § 236.13(d).

Respondents also unsuccessfully attempt to distinguish *C.R.J.M. v. Kennedy*, No. 2:26-cv-00742, 2026 WL 809940 (E.D. Cal. Mar. 24, 2026), a recent case that relied on many of these same arguments to conclude that juvenile delinquency charges do not trigger the mandatory detention provisions of the LRA. Yet, the factual distinctions Respondents point to in *C.R.J.M.* were not determinative of and thus do not change the substantive analysis the court engaged in regarding the application of the LRA to juvenile delinquency. *See C.R.J.M.*, 2026 WL 809940 at

*2. The court in *C.R.J.M.* cited to *Matter of Devison*, 22 I&N Dec. 1362, 1365 (BIA 2000), which reaffirmed the longstanding agency rule "that juvenile delinquency proceedings are not criminal proceedings, that acts of juvenile delinquency are not crimes, and that findings of juvenile delinquency are not convictions for immigration purposes."

Respondents' reliance on *Doe v. Moniz*, 800 F.Supp. 3d 203 (D. Mass. 2025), is similarly misplaced. In *Moniz*, the court rejected the petitioner's argument that the LRA did not apply to him because of his Special Immigrant Juvenile Status (SIJS). *Id*., at 212, *appeal dismissed*, No. 25-2095, 2025 WL 4722778 (1st Cir. Nov. 25, 2025). The petitioner in *Moniz* had approved SIJS and was eighteen years old, *i.e*. not a minor, when he was arrested by local police for allegedly shoplifting. *Id*. at 207. ICE took the *Moniz* petitioner into custody after his arrest and asserted he was subject to mandatory detention under the LRA. *Id*. at 208, 212. The *Moniz* petitioner argued that a separate provision, 8 U.S.C. § 1255(h)(2), expressly exempts individuals with SIJS from the inadmissibility criteria described in 8 U.S.C. § 1226(c)(1)(E)(i), and the court rejected this argument. *Id*. at 212-213. In the instant case, M.L.S. is making no such argument. Furthermore, contrary to Respondents' assertion, Opp. at 5-6, the *Moniz* decision[5] does not contradict the *C.R.J.M.* court's analysis. The *Moniz* court simply did not analyze the same question that was at issue in *C.R.J.M.* and is at issue here: whether juvenile acts trigger 8 U.S.C. §§ 1226(c)(1)(E)(ii). The answer to that question is clear: they do not.

## II. ICE's Lack of Pre-Deprivation Process Violates M.L.S.'s Procedural Due Process.

ICE has made its intentions known: the agency will re-detain Petitioner without any pre-deprivation process assessing whether this is necessary. While Respondents suggest that they

[5] The *Moniz* decision supports Petitioner's procedural due process arguments. *Doe v. Moniz*, 800 F. Supp. 3d 203, 216 (D. Mass. 2025), appeal dismissed, No. 25-2095, 2025 WL 4722778 (1st Cir. Nov. 25, 2025) (finding detention without a bond hearing violates due process rights). See also, Infra., Section B.

may re-detain M.L.S. simply because they have unilaterally asserted in an ICE detainer that he [redacted] Dkt. 19, Opp. Br. at 3, the Supreme Court has made clear that ICE's detention authority is limited by the demands of the Constitution, which prohibits the government from depriving any "person" of "liberty" without due process of law. *Zadvyas v. Davis*, 533 U.S. 678, 690 (2001); U.S. Const. amend. V. Respondents thus must not only have a statutory basis for detaining M.L.S., but here, given M.L.S.'s significant interest in his continued liberty, the Due Process Clause requires that Respondents provide him with meaningful process prior to re-detaining him.

While M.L.S.'s habeas petition and motion for a temporary restraining order or preliminary injunction extensively engage in an analysis of the relevant factors for determining what process is due under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), Dkt.1, Pet. ¶¶ 52-61; Dkt. 2, TRO Motion, 12-13. Respondents fail to meaningfully address or rebut this analysis.

Weighing the *Mathews* factors here results in the unavoidable conclusion that M.L.S. is entitled to meaningful process before a neutral arbiter with an opportunity to provide evidence and review government evidence, either before he is re-detained or before he is transferred away from this jurisdiction. "[T]he [Supreme] Court usually has held that the Constitution requires some kind of hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (collecting cases from civil detention and property contexts). While post-arrest process has been condoned in some circumstances, it must be provided immediately, before any final decision about re-detention is made. *See, e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (requiring multiple layers of process before re-detention of criminal parolee); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, probation); *Young v. Harper*, 520 U.S. 143, 147–49 (1997) (same, pre-parole).

Other courts considering ICE's desire to re-detain previously released unaccompanied immigrant children accused of posing a risk to public safety, like M.L.S., have held the agency to these same due process standards. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1177 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). In *Saravia*, the district court considered a putative class of unaccompanied children previously released from ORR custody that ICE sought to re-detain based on allegations of gang affiliations. The court concluded that because these young people "cannot reasonably be rearrested absent a material change in circumstances, due process . . . requires that the minor receive a prompt hearing in which the government must show that these changed circumstances exist. At that hearing, the minor must have the opportunity to rebut the government's showing, and, if he does so successfully, the neutral decision maker must have the ability to order a return to the status quo." 280 F. Supp. 3d at 1197.

The *Saravia* court further specified that "certain minimal protections are required to ensure that a minor is not erroneously taken away from his family [and] transported across the country to a high-security facility," including that the minor "must receive notice of the basis for the rearrest and an opportunity to be heard," and that "[t]he hearing must, consistent with existing practice for other immigrants rearrested on grounds of changed circumstances, take place within seven days of arrest, absent extraordinary circumstances," and "must take place in the jurisdiction where the minor has been arrested or where the minor lives, to provide a meaningful opportunity for the minor, his sponsor, and any existing counsel to rebut the factual basis for the minor's rearrest and detention," including to "call necessary witnesses." *Id*. The Ninth Circuit affirmed, rejecting arguments that pre-existing procedures were sufficient and that holding the hearing in the jurisdiction where the minor lived would be too burdensome for ICE.

*Saravia for A.H.*, 905 F.3d at 1143-45; *see also Saravia*, 280 F. Supp. 3d at 1198 n.15 ("And, to the extent that the logistical difficulties associated with housing minors for the period between their rearrests and hearings prove daunting, the government could instead have a hearing before arresting them in the first place.").

District courts across the country have further affirmed these principles in granting the habeas petitions of individuals previously released from ORR custody, like M.L.S., then re-detained without any meaningful process. *See, e.g.*, *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025) (holding that due process requires a "predeprivation bond hearing where the government bears the burden of proving by clear and convincing evidence that petitioner is a flight risk or danger to the community"); *F.S.S.M. v. Wofford*, No. 25-01518, 2025 WL 3526671, at *3 (E.D. Cal. Dec. 9, 2025) (similar); *Garcia Domingo v. Castro*, 806 F. Supp. 3d 1246, 1252-53 (D.N.M. 2025) (similar); *Urquilla-Ramos v. Trump*, No. 2:26-CV-00066, 2026 WL 475069 (S.D.W. Va. Feb. 19, 2026) (similar).

While Respondents claim these cases are distinguishable based on the petitioners' personal histories, Opp. at 7-8, as *Saravia* demonstrates, this does not fundamentally alter the analysis. The government does have an interest in ensuring that noncitizens do not pose a danger to the community while their immigration proceedings are ongoing, but "adopting an additional procedural safeguard that will reduce the risk that a child is erroneously removed from a sponsor's custody and placed into a taxpayer-funded juvenile detention facility will in no way negatively impact the government's interest in public safety." 280 F.Supp.3d at 1200. Rather, "[i]f the government adduces sufficient credible evidence of [dangerousness] during the hearing, the child will be placed into appropriate ORR custody." *Id.* Moreover, it is also important that this process "protect[s] the interests embodied in immigration statutes directed toward minors,"

as it will "support the goal of the TVPRA and the *Flores* decree that minors be placed with a sponsor whenever it is in their best interest." *Id*. at 1201.

Respondents also point out that M.L.S.'s SIJS approval, without deferred action, does not categorically prohibit his detention. Dkt. 19, Opp. Br. at 8, but this is beside the point. M.L.S. does not claim that his SIJS prevents his detention, rather that his SIJS strengthened his reasonable expectation that he would be allowed to live at liberty until the government demonstrated, through some meaningful process, that his detention–which would strip him of the permanency Congress created SIJS to provide–is justified. *See* Dkt. 1, Pet. at ¶ 58; Dkt. 2, TRO Motion at 13. The fact that M.L.S. has [redacted] does not negate his liberty interest as a SIJS recipient, nor have the various courts affirming the liberty interests of SIJS recipients conditioned those interests on lack of [redacted]. *See* Dkt. 2, TRO Motion at 13 (collecting cases Respondents do not rebut).

Respondents' assertion that, if the LRA does not apply (which it does not), M.L.S. would be provided access to a post-detention bond hearing under 8 U.S.C. § 1226(a), Dkt. 19, Opp. Br. at 6-7, does not alter the procedural due process analysis here. Critically, the Fourth Circuit has held that noncitizens bear the burden of proving they do not present a flight risk or danger in bond hearings under 1226(a). *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022). By contrast, courts that consider the re-detention of unaccompanied children have held that the government must bear the burden of showing that re-detention is necessary. *See, e.g.*, *Saravia*, 280 F. Supp. 3d at 1197; *Singh*, 2025 WL 1918679, at *8. Moreover, there is no requirement that any § 1226(a) bond hearing occur in the jurisdiction of M[redacted]'s residence, where he is best equipped to gather evidence and witnesses, nor that it occur prior to or immediately following him being

taken into custody. *Compare Saravia*, 280 F. Supp. 3d at 1197. This is plainly inadequate to satisfy the Due Process Clause.

ICE clearly has no intention to provide M.L.S. with meaningful pre-deprivation process. Given the government's waiver of any opposition to these points and their clear intention to violate M.L.S.'s due process rights, the Court should grant M.L.S's motion on this ground, enjoining his re-detention without prompt and adequate process in this jurisdiction.[6]

### A. The TVPRA and Flores Agreement Require Placement in the Least Restrictive Setting that is in the Best Interest of M.L.S.

ICE admits that it has not found a placement for M.L.S. at all, much less an appropriate one, despite having over two months to do so. ICE issued its detainer on July 13, 2026 (Dkt. 5) and for over two months was aware that Petitioner's release from DJJ custody was scheduled for

---

[6] Given widespread concerns about the neutrality and fundamental fairness of immigration courts, as well as their compliance with federal courts' orders, M.L.S. respectfully asks that this Court provide any necessary future process. *See, e.g.*, *Gonzalez v. Leyva*, No. 2:26-CV-01218, 2026 WL 1431003, at *3 (D. Nev. May 21, 2026) (noting that 50 days after the court had granted class wide relief, "Federal Respondents have not been deterred from continuing to detain Class Members like Petitioner without appropriate custody determinations"); *Juan T.R. v. Noem*, No. 26CV-0107, 2026 WL 555601, at *1 (D. Minn. Feb. 26, 2026) (habeas court attaching appendices cataloging 210 court orders the Department of Justice had violated in 143 habeas cases, which included over 15 instances of failing to provide a court-ordered bond hearing); *Kumar v. Soto*, No. 26-cv-777, Dkt. No. 21. (D.N.J. Feb. 13, 2026) (filing from the New Jersey U.S. Attorney's Office admitting to violating 56 orders in habeas cases, including holding bond hearings in the required time period, and failing to file 16 required status updates); *Kumar v. Carnes*, No. 2:26-CV-01391-DHU-KRS, 2026 WL 1686070, at *3 (D.N.M. June 10, 2026) (noting the habeas court was "no longer confident that further orders meant to redress constitutional infirmities and concerns will be followed"); *Ortiz-Chavez v. Chestnut*, No. 1:26-CV-01182, 2026 WL 1759592, at *2 (E.D. Cal. June 18, 2026) (granting motion to enforce where Respondents failed to notify petitioner or her counsel of the bond hearing and petitioner was forced to appear pro se without any evidence and was denied bond); *Ulloa Bueno v. Soto*, No. 26-CV-896, 2026 WL 509102, at *2 (D.N.J. Feb. 24, 2026) (granting release after immigration judges twice failed to conduct a neutral bond hearing with the burden on DHS); *Said v. Noem*, 3:25-cv-938-MOC (W.D.N.C, Feb. 4, 2026) (granting TRO where IJ's refusal to consider evidence, or let petitioner defend himself against assertion he had not complied with a prior condition of release, likely violated due process). The ability to conduct bond proceedings in habeas cases has long been recognized as "legal and logical concomitant" of habeas jurisdiction. *Leslie v. Holder*, 865 F. Supp. 2d 627, 634–35 (M.D. Pa. 2012); *see also Flores-Powell v. Chadbourne*, 677 F.Supp.2d 455, 474–78 (D. Mass 2010); *Ramirez v. Watkins*, No. 10-126, 2010 WL 6269226, at *17–19 (S.D. Tex. Nov. 3, 2010). Many habeas courts have accordingly held such hearings themselves, reasoning that doing so can both conserve judicial resources and ensure that the petitioner is not subject to further improper detention. *See, e.g.*, *Alli v. Decker*, 644 F. Supp. 2d 535, 542 (M.D. Pa. 2009), *rev'd in part, vacated in part on other grounds*, 650 F.3d 1007 (3d Cir. 2011); *Ramirez*. 2010 WL 6269226, at *17–19; *Thaxter v. Sabol*, No. 14-02413, 2016 WL 3077351, at *3 (M.D. Pa. June 1, 2016); *L.G.M. v. Larocco*, 788 F.Supp.3d 401, 404–407 (E.D.N.Y. 2025); *Centeno-Martinez v. Jamison*, No. CV 25-3593, 2025 WL 3157711, at *3 (E.D. Pa. Nov. 12, 2025).

September 19, 2026. Yet ICE refused to provide M.L.S.'s counsel with any information even confirming it intended to treat M.L.S. as an unaccompanied child or would not hold him with unrelated adults for more than 24 hours. Dkt 1, ¶ 51, Ex. J, Marin Decl., ¶¶ 2-3. ICE now claims that it is "coordinating" with ORR and "exploring avenues" for placing M.L.S. in the least restrictive setting. Dkt. 19-5 at ¶ 14. ICE's statements are vague, conclusory, not time specific, and not supported by corroborating evidence. They therefore should not be probative here.

Indeed, courts within the Fourth Circuit have consistently held that conclusory ICE declarations by the agency are insufficient to carry the government's burden. *See, e.g., Montes v. Mullin*, 833 F. Supp. 3d 585, 591 (E.D. Va. 2026) (holding that declaration by an ICE official stating that "ICE is ready to move forward with removal, and if the Court were to lift its Order forbidding removal" ICE would send petitioner to a "staging facility" is plainly inadequate to show noncitizen's removal is significantly likely in the reasonable foreseeable future); *Abrego Garcia v. Noem*, 825 F. Supp. 3d 564, 572 (D. Md. 2026) (collecting cases); *Banoub v. Crawford*, 819 F. Supp. 3d 477 (E.D. Va. 2025) (ICE declarations claiming to be "actively seeking" a travel document and "continuing to work" on removal are insufficient); *Hajbeh v. Loiselle*, 490 F. Supp. 2d 689 (E.D. Va. 2007) (rejecting ICE declarations where ICE made claims of "best efforts" and "promises" without evidence to suggest that progress is being made to effectuate removal).[7]

Without any meaningful assurances from Federal Respondents that M.L.S. will not unlawfully be treated as an adult or an accompanied child, the Court should order his release to

[7] Unfortunately, several ICE declarations have also recently proven to be incorrect. *See, e.g.*, *Nat'l Treasury Emps. Union v. Vought*, 774 F. Supp. 3d 1, 57 (D.D.C. 2025), *vacated and remanded on other grounds*, 149 F.4th 762 (D.C. Cir. 2025) ("It is now clear to the Court that the omissions from the first declaration rendered it to be highly misleading, if not intentionally false."); *D.V.D. v. U.S. Dep't of Homeland Sec.*, 784 F. Supp. 3d 401, 406 (D. Mass. 2025) (noting admittedly false declaration by ICE agent on which the court unwittingly relied).

DSS custody. Federal Respondents' assertion that M.L.S. will have no housing available if he is released from DJJ custody, Dkt. 19, Opp. at 9-10, is simply wrong. DSS continues to have legal custody of M.L.S. and is required under law to provide him with housing. Ex. A, DSS Affidavit. DSS has [redacted]. *Id.*

With no indication that Federal Respondents intend to comply with their constitutional or statutory obligations, the Court should permit M.L.S. to return to DSS custody and enjoin his re-detention absent adequate pre-deprivation process and compliance with the TVPRA and Flores Settlement Agreement. This would restore the status quo ante, in which M.L.S would have returned to DSS care on his DJJ release date. At the very least, M.L.S. should be permitted to return to DSS custody until the underlying habeas petition in this case is fully resolved.

**CONCLUSION**

For these reasons, this Court should enjoin the Federal Respondents from re-detaining M.L.S. without adequate pre-deprivation process and without compliance with the TVPRA and Flores Settlement Agreement, and order his release to DSS.

Date: September 24, 2026, Respectfully submitted,

s/Brad Banias
BRAD BANIAS
Banias Law, LLC
602 Rutledge Avenue
Charleston, SC 29403
843.352.4272
brad@baniaslaw.com
SC Bar No.: 76653
Fed ID No.: 11585bb

s/Diana Marin
National Immigration Project

1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20009[8]
734-307-0862
diana@nipnlg.org
(Pro Hac Vice Admission Pending)

s/Stephanie E. Norton
National Immigration Project
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20009[9]
202-217-4742
ellie@nipnlg.org

(Pro Hac Vice Application pending)

*Attorneys for Petitioner*

[8] Not admitted in DC, working remotely from Michigan and admitted in Michigan and New York only.
[9] Not admitted in DC, working remotely from Wyoming and admitted in Wyoming and New York only.