**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

M.L.S., a minor, by and through his next friend, Dylan Lingerfelt,

Petitioner,

v.

Warden, Upstate Evaluation and Development Center; Field Office Director, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; David Venturella, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; Markwayne Mullin, in his official capacity as U.S. Secretary of Homeland Security; and Todd Blanche, in his official capacity as the Attorney General of the United States,

Respondents.

Case No. 8:26-cv-04122-RMG

**ORDER AND OPINION**

This matter comes before the Court on Petitioner's application for temporary injunctive relief to prevent United States Immigration and Customs Enforcement (ICE) from taking him into custody pursuant to a detainer issued to the South Carolina Department of Juvenile Justice (DJJ), where he is now being held. (Dkt. No. 2). The Court entered a TRO on September 18, 2026, directing DJJ to continue holding Petitioner until Respondents had the opportunity to file a response to the Petitioner's application for temporary injunctive relief and a hearing could be conducted. (Dkt. No. 9, 11). The Federal Respondents filed a memorandum in opposition on September 21, 2026, and Petitioner submitted a reply. (Dkt. Nos. 19, 28). A hearing was conducted on this matter on September 28, 2026. The matter is now ripe for disposition.

## I. Factual Background

Petitioner, then 13 years of age and a native of Honduras, presented to the American/Mexican border as an unaccompanied minor four years ago. He reported that his father had been murdered and his mother had abandoned him. Petitioner was taken into custody by the Office of Refugee Resettlement and released to an aunt. Petitioner was subsequently abandoned by his aunt. He then went into the legal custody of the South Carolina Department of Social Services (DSS).

Petitioner was arrested in February 2026 for a variety of offenses, including Armed Robbery with a Deadly Weapon, Assault and Battery Second Degree, and two counts of Auto Breaking. The matter was referred to South Carolina Family Court, Thirteenth Circuit. Petitioner pled guilty to the offenses and was adjudicated to have committed the charged offenses by the Family Court on July 1, 2026. The Family Court committed Petitioner to DJJ for a 120-day sentence and placed him on probation for a year thereafter. (Dkt. No. 25-4).

While Petitioner was serving his sentence at DJJ, he was approved by ICE for Special Immigrant Juvenile Status (SIJS), after the Family Court found that he had suffered from parental maltreatment and that his best interests lay in remaining in the United States. (Dkt. No. 7 at 22-56).[1] Additionally, ICE issued DJJ a detainer to take Petitioner into custody once he was ready for release from his Family Court sentence. (Dkt. No. 33). The detainer notice asserted as its authority the Laken Riley Act, 8 U.S.C. § 1226(c)(1)(E), as well as the general detainer authority arising under 8 U.S.C. § 1226(a). Federal Respondents assert that the Petitioner has no right to a

[1] Under 8 U.S.C. § 1155, a child who has suffered parental abuse or neglect can receive an adjustment of status by United States Immigration officials called Special Immigrant Juvenile Status. If the designation is granted, the child may be eligible for a green card.

bond hearing under the Laken Riley Act but acknowledge that he has a right to a bond hearing under § 1226(a).

Petitioner was scheduled for release from DJJ on the morning of September 19, 2026, and was then to be taken into ICE custody based upon the detainer. On the evening of September 18, 2026, the Court issued its TRO and directed that DJJ continue to hold Petitioner pending the disposition of this present motion for temporary injunctive relief. Petitioner argues that the Laken Riley Act, a 2025 statute which designates certain acts and crimes for mandatory detention, does not apply to minors or to juvenile adjudications. He asserts that under longstanding practice, juvenile adjudications are not treated as criminal convictions under immigration law. Additionally, Petitioner argues that his detention by ICE violates his due process rights and the Trafficking Victims Protection Reauthorization Act (TVPRA), which requires unaccompanied immigrant children to be placed in the least restrictive setting in the best interest of the child. 8 U.S.C. § 1232(c)(2)(A). (Dkt. No. 2). Petitioner seeks an order preventing ICE from taking him into custody and allowing him to remain in DSS custody.

The Federal Respondents assert that the Laken Riley Act contains no exception for minor children or for juvenile offenses and note that the statutory language includes any person who is "charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer." 8 U.S.C. § 1226(c)(1)(E)(ii). The Federal Defendants further assert, alternatively, that they have the discretionary authority to take an unlawfully present person into custody under 8 U.S.C. § 1226(a), which permits the arrested person to seek a bond with an immigration judge.

## II. Legal Standard

Rule 65 of the Federal Rules of Civil Procedure provides that the Court may issue a TRO or a temporary injunction based upon the following four factors: (1) the movant's likelihood of success on the merits, (2) whether the movant will face irreparable harm in the absence of preliminary relief, (3) whether the balance of equities favors preliminary relief, and (4) whether injunctive relief is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006) ("The standard for granting either a TRO or a preliminary injunction is the same.").

## III. Discussion

### A. The Laken Riley Act

The Federal Respondents first argue that they have the authority to take Petitioner into custody pursuant to the Laken Riley Act. The Laken Riley Act states in full:

> The Attorney General shall take into custody any alien who . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .

8 U.S.C. § 1226(c)(1)(E)(ii). The statute is silent regarding its application to minors, persons with SIJS designation, or adjudications for juvenile offenses. Petitioner argues that nonetheless the Laken Riley Act excludes minors and that Petitioner's juvenile offense adjudications should not be considered criminal offenses under longstanding immigration law principles.

In interpreting a statute, the Court must first look to the statutory text. *Copley v. United States*, 959 F.3d 118, 123 (4th Cir. 2020). The Court looks to the language itself, the specific context in which it is used, and the broader context of the statute as a whole. *Robinson v. Shell Oil Company*, 519 U.S. 337, 341 (1997). In addressing a party's request to read into a statute language not included in its text, Justice Brandeis, in *Ebert v. Poston*, 266 U.S. 548, 554 (1925), referenced

the statutory construction canon *casus omissus*—"The doctrine that nothing is to be added to what a legal instrument states or reasonably implies; the principle that a matter not covered is to be treated as not covered." OMITTED-CASE CANON, Black's Law Dictionary (12th ed. 2024). "The judicial function to be exercised in construing a statute is limited to ascertaining the intention of the Legislature therein expressed. A *casus omissus* does not justify judicial legislation." *Ebert*, 266 U.S. at 554.

Petitioner argues that there is a longstanding principle in immigration law that juvenile adjudications are civil, not criminal offenses, and that this implies a congressional intent to exclude minors or juvenile adjudications from the Laken Riley Act. *See In re Devison*, 22 I. & N. Dec. 1362, 1365 (B.I.A. 2000) ("We have consistently held that juvenile delinquency proceedings are not criminal proceedings, that acts of juvenile delinquency are not crimes, and that findings of juvenile delinquency are not convictions for immigration purposes."). Petitioner further references a recent California District Court decision, *C.R.J.M. v Kennedy*, No. 2:26-cv-00742-DJC-EFB, 2026 WL 809940 (E.D. Cal. March 24, 2026), where a minor with a SIJS designation was arrested for a juvenile offense and was taken into ICE custody. The *C.R.J.M*. court found the Laken Riley Act inapplicable, reasoning that the minor "has not been charged with or arrested for any of the defined offenses within the Laken Riley Act" and the juvenile offenses "remain pending." *Id*. at *2. The District Court additionally noted that utilizing state juvenile proceedings to support mandatory detention "runs contrary to BIA precedent, which holds that juvenile delinquency proceedings are civil in nature." *Id*.

By contrast, a Massachusetts District Court, in *Doe v. Moniz*, 800 F. Supp. 3d 203 (D. Mass. 2025), took a different approach to the Laken Riley Act. The petitioner in *Doe* was an 18-year-old who entered the United States as an unaccompanied child and was subsequently given a

SIJS designation. He was arrested for shoplifting and taken into ICE custody. The petitioner argued that his SIJS designation exempted him from the Laken Riley Act. The District Court noted that while Congress could have carved out an exception for persons with SIJS designations under the Laken Riley Act, there was no evidence of such a congressional intent. The Court thus declined to exempt the petitioner from the Laken Riley Act on the basis of his SIJS designation. *Id*. at 213. The Court did, however, provide the petitioner relief under the Due Process Clause, finding that denying the petitioner a bond hearing violated the Due Process Clause under the standards of *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Id.* at 216.

Numerous other courts have followed the reasoning of the Massachusetts District Court decision in *Doe*, holding that mandatory detention under the Laken Riley Act without a bond hearing violates the Fifth Amendment's Due Process Clause under *Mathews v. Eldridge*. *See Peralta-Malla v. Mullin*, 26 Civ. 2903 (AT), 2026 WL 1346325, at *3-6 (S.D.N.Y. March 14, 2026); *Alcanara Guerrero v. Wesling*, 832 F.Supp.3d 104, 111-12 (D. Mass. 2026); *C.R.R. v. Bondi*, 832 F. Supp. 3d 904, 908-09 (D. Minn. 2026); *Sandoval Rodriguez v. Warden*, No. 1:26-cv-2080 DJC CSK, 2026 WL 970545, at *4 (E.D. Cal. April 10, 2026); *S.E. v. Noem*, No. 1:26-cv-00356-DAD-SCR, 2026 WL 206085, at *2 (E.D. Cal. Jan. 27, 2026).

The legislative history of the Laken Riley Act, most notably the Senate floor debate, supports the application of the Laken Riley Act to minors. One of the Act's principal opponents, Senator Merkley, warned his colleagues that the proposed law would apply to children and would result in minors with "no conviction . . . sitting in prison without recourse, in an ICE prison." 171 Cong. Rec. S198-01, S214. Senator Merkley requested unanimous consent to introduce an amendment to "exclude[] children from this bill." He explained:

> This bill as written requires ICE officers to detain individuals who have neither been charged nor convicted of a crime—neither charged nor convicted. Children

> imprisoned without being charged or convicted of a crime—that is what this bill does.

*Id*. at S214.

Senator Merkley offered two examples about how the proposed Act could adversely affect children. In one example, he argued that a five-year-old child who "gets hungry and grabs [an] apple . . . must be put in an ICE prison—must be without discretion—and there is no provision in the bill to get that girl out. There is no required review." *Id.* Senator Merkley offered a second example of a minor child who a police officer arrested after mistakenly believing that the child had put something in his pocket. He asserted that due to the fact there was an arrest "ICE is required to indefinitely imprison that child . . . with no charge, no conviction, no crime, to prison." *Id*.

Senator Merkley's request for unanimous consent to offer his amendment to exclude children from the Laken Riley Act was denied by the sponsor of the bill, Senator Britt. She rejected a proposed carve out for children, noting that "you have got teen migrant gangs running rampant in New York City, allegedly running theft rings, with children as young as 11." *Id*. at S215-16.

The Laken Riley Act's text is far broader than simply focusing upon convictions. The Act includes within its reach persons who are "charged with," "arrested for," "admit[] having committed," or "admit[] committing acts which constitute the essential elements" of certain designated crimes. § 1226(c)(1)(E)(ii). This language reaches arrests and conduct by both adults and juveniles, without any exception for minors or juvenile adjudications. As noted below, however, the Laken Riley Act's requirement of mandatory detention based upon arrests of persons without any finding that they are a flight risk or a threat to the safety of the community raises significant due process issues.

The Court finds that the Laken Riley Act applies to Petitioner. He admitted to committing multiple unlawful acts that fall within the statutory language, most notably Armed Robbery with a Deadly Weapon. The statutory language, legislative history and case law all support the application of the Laken Riley Act to Petitioner.

**B. The Due Process Clause of the Fifth Amendment**

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty or property without due process of law." It is well settled that the Fifth Amendment entitles aliens to due process of law in deportation proceedings, including an individualized determination of bond. *See Demore v. Kim*, 538 U.S. 510, 523 (2003). A noncitizen engaged in removal proceedings may be subject to a denial of bond where there is a showing that the "person may flee or pose a danger to any other person in the community." 18 U.S.C. § 3142(d)(1)-(d)(2).

The Supreme Court has found that a "limited class of deportable aliens" may be subject to mandatory detention without bond where Congress had before it evidence that persons within the class were likely to flee or pose a danger to the community. In *Demore v. Kim*, a previous version of § 1226(c) provided for the mandatory detention of persons who had been convicted of an aggravated felony and were in the process of removal. 538 U.S. at 518. *Demore* addressed in detail evidence presented in the legislative process which showed that, at this stage of the deportation process, there was a high likelihood of deportable aliens failing to appear for their removal hearings. *Id*. at 517-20, 528. This evidence provided a sufficient basis to impose mandatory detention without the Government making a showing of danger to the community or likelihood of the deportable alien fleeing. *Id*. at 530.

A number of district courts, which have found the Laken Riley Act applicable to the petitioner, have determined that a denial of the right to a hearing to make an application for bond constitutes a denial of due process. *Alcantara Guerrero*, 832 F. Supp. 3d at 110; *Doe v. Moniz*, 800 F. Supp .3d at 216; *Peralta-Malla*, 2026 WL 1346325, at *4. These courts noted that Congress, in adopting the Laken Riley Act, made no findings that violation of one of the enumerated criminal offenses correlated with flight risk or dangerousness or "how detention without a bond hearing in such circumstances 'serves the purpose of preventing deportable aliens from fleeing prior to or during their removal proceedings.' " *Doe v. Moniz* at 216, citing *Demore*, 538 U.S. at 528.

A petitioner's right to a bond hearing following detention pursuant to the Laken Riley Act is subject to review under the three part test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which includes: (1) the private interest of the petitioner affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used and probable value of additional procedural safeguards; and (3) the Government's interest, including the burden of added procedural requirements.

In this present action, Petitioner has a strong liberty interest in seeking bond. The private interest at stake here "is the most elemental of liberty interests—the interest in being free from physical detention." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). The Court finds that Petitioner's private interest satisfies the first *Mathews* factor.

The Court further finds that the risk of erroneous deprivation of Petitioner's liberty interest is high here because there is no showing from Petitioner's juvenile adjudications, standing alone, that he is likely to flee or is a threat to the community. Due process, at its most basic level, requires an individualized determination of Petitioner's eligibility for bond based on his specific history,

characteristics, and risk factors. Simply assuming that a person who falls within the Laken Riley Act is disqualified for a bond exposes Petitioner to an unnecessarily high risk of an erroneous deprivation of liberty. The Court finds that Petitioner satisfies the second *Mathews* factor.

Last, the burden on the Government to conduct a bond hearing is, at most, minimal. Numerous bond hearings are held daily by immigration judges across the United States. Further, an erroneous deprivation of liberty, resulting in an unnecessary detention, imposes on the Government substantial costs that might be avoided with an appropriate due process hearing. The Court finds that Petitioner satisfies the third *Mathews* factor.

Based on the foregoing, the mandatory detention of Petitioner under these circumstances, without any showing of dangerousness to the community or likelihood to flee or a congressional finding of the same during the adoption of the Laken Riley Act, constitutes a denial of due process. Petitioner has the right under the Fifth Amendment to apply for bond before an immigration judge and an individualized determination of his potential dangerousness to the community or likelihood that he would flee during his removal proceedings.

In regard to Petitioner's application for a temporary injunction, the Court finds that Petitioner has shown a likelihood of success on the merits regarding the right to a prompt bond hearing before an immigration judge upon being taken into custody pursuant to the Laken Riley Act. He has further shown that he will face irreparable harm in the absence of preliminary injunctive relief and that the balance of equities and the public interest tip in his favor. *Winter*, 555 U.S. at 20. Consequently, the Court grants Petitioner temporary injunctive relief only to the extent that Federal Respondents are ordered and directed to provide him a prompt hearing before an immigration judge upon being taken into custody pursuant to the Laken Riley Act for an

individualized determination on an application of bond based upon dangerousness and a likelihood of fleeing.

**C. Trafficking Victims Protection Reauthorization Act (TVPRA):**

The TVPRA provides that an unaccompanied child who comes into the custody of Health and Human Services "shall be promptly placed in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). In making that placement, the Secretary "may consider danger to self, danger to the community, and risk of flight." *Id*.

Petitioner was processed by immigration officials pursuant to the TVPRA and released initially to a family member after a finding by the Office of Refugee Resettlement that he was not dangerous or a flight risk. Petitioner argues that based upon this initial finding under the TVPRA, he cannot be detained by ICE and must be placed in the least restrictive setting that is available which is in the best interest of the child.[2] Petitioner has provided documentation that DSS is prepared to resume custody of him and provide a placement in its foster care system. (Dkt. No. 31-1).

An analogous situation arose in *Saravia v. Sessions*, 280 F. Supp. 3d 1168 (N.D. Cal. 2017), *affirmed* 905 F.3d 1137 (9th Cir. 2018), where the Government sought to detain minors previously processed under the TVPRA based upon the placement of their names on a list as gang members compiled by the Government. The *Saravia* court held that after being processed under the TVPRA and released, a minor could not be detained for removal without evidence of "materially changed

---

[2] During the Senate debate, Senator Merkley offered an amendment to require that any detention of a minor under the Laken Riley Act be subject to the best interest of the child standard. Senator Merkley asked for unanimous consent for consideration of the amendment. The sponsor of the Laken Riley Act, Senator Britt, objected, ending any consideration of the proposed amendment. 171 Cong. Rec. S215.

circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk, or is now subject to a final order of removal." *Id*. at 1176. To establish a material change of circumstance, "due process requires the government to give the minor a prompt hearing before an immigration judge or other neutral decisionmaker, where the government must set forth the basis for its decision to rearrest the minor, and where the minor and his sponsor may seek to rebut the government's showing." *Id*. at 1194.

The Court finds that Petitioner's prior processing under the TVPRA does not immunize him from detention by ICE. This detention must, however, be accompanied by a prompt hearing before an immigration judge for the Government to show a change in circumstances and the Petitioner to offer evidence in rebuttal. Further, as set forth above, due process requires that Petitioner be afforded the right to apply for bond and a determination by the immigration judge whether bond is granted or denied on the basis of dangerousness and likelihood of fleeing. This right to due process after being processed under the TVPRA provides Petitioner a second and independent basis for a prompt hearing before an immigration judge upon detention by ICE.

In regard to Petitioner's application for a temporary injunction, the Court finds that Petitioner has shown a likelihood of success on the merits regarding the right to a prompt bond hearing before an immigration judge to address any material change in circumstances asserted by the Government under the TVPRA and an application of bond after being taken into custody pursuant to the Laken Riley Act. He has further shown that he will face irreparable harm in the absence of preliminary injunctive relief and the balance of equities and the public interest tip in his favor. *Winter*, 555 U.S. at 20.

Consequently, the Court grants Petitioner temporary injunctive relief only to the extent that the Federal Respondents are ordered and directed to provide him a prompt hearing before an

immigration judge upon being taken into custody pursuant to the Laken Riley Act for an individualized determination of a material change in circumstances and an application of bond based upon dangerousness and a likelihood of fleeing.

**D. The Flores Settlement Agreement**

Petitioner argues that the *Flores* Settlement Agreement, which is a nationwide consent order entered into by the Government, sets minimum standards for the treatment of minors in immigration custody. This includes limitations on the placement of minors with adults and placement in the least restrictive setting. *See Flores v. Garland*, No. CV 85-4544-DMG, 2024 WL 3467715, at *6 (C.D. Cal. 2024). Petitioner seeks to be detained, if at all, in the District of South Carolina. He further argues that since there are no ICE facilities for minors, he should be granted bond and released to the custody of DSS.

The *Flores* Agreement, like the TVPRA, does not immunize a minor from detention based on a material change of circumstances. The *Flores* Agreement does, however, provide the class of plaintiffs, which includes Petitioner, the right to separation from adults in any ICE detention facility, an important safety protection for minors. Since there is no ICE detention facility in South Carolina, Petitioner must be detained elsewhere if an immigration judge denies his application for bond. Should Petitioner ultimately be detained by ICE, he must be provided the protections of the *Flores* Settlement Agreement, which includes placement in a detention facility with adults for no longer than 24 hours.

Balancing these important interests, the Court declines to bar Petitioner's detention outside South Carolina if his application of bond is denied.[3] The Court will, however, retain jurisdiction over this matter should Petitioner be detained and held outside the District of South Carolina.

**IV. The Conducting of Petitioner's Bond Hearing**

The Court orders and directs that the Government provide a hearing to Petitioner to address an application for bond and a material change of circumstances under the TVPRA within the District of South Carolina. The Government has agreed that the hearing will be conducted remotely by an immigration judge, and Petitioner will have the right to counsel and to offer evidence in support of his positions. By agreement of the parties, Petitioner will remain in the custody of DJJ pending his due process hearing. If DJJ is unable to conduct Petitioner's remote hearing because of lack of facilities for remote transmission, DJJ is directed to transport Petitioner to a mutually acceptable location for the conducting of the hearing.[4]

The parties have raised with the Court the appropriate burden of proof regarding bond and the application of the TVPRA. (Dkt. Nos. 34, 35). The Court finds that the immigration court, with full jurisdiction over this matter, is the proper forum to address this issue.

Petitioner shall remain in the custody of DJJ until an immigration judge rules on his application for bond and determines whether he has had a material change of circumstances under the TVPRA. If the immigration judge denies Petitioner bond and finds there has been a material

---

[3] Should an immigration judge grant Petitioner's application for bond, he would remain in the custody of DSS in the District of South Carolina subject to supervision pursuant to any bond issued by the immigration judge.

[4] The Court has offered to assist in arranging for the conducting of the hearing at a federal courthouse near where Petitioner is now housed in Union County, South Carolina.

change of circumstances under the TVPRA, ICE is authorized to take Petitioner into custody. If Petitioner is granted bond, he would be released subject to the conditions for bond set by the immigration judge.

## V. Conclusion

Based on the foregoing, the Court (1) dissolves the previously issued TRO (Dkt. No. 11); (2) grants Petitioner a temporary injunction only to the extent that the Federal Respondents are directed to provide Petitioner a prompt hearing before an immigration judge for an individualized determination of bond and a material change of circumstances upon his detention pursuant to the Laken Riley Act; (3) denies Petitioner's request that the Federal Defendants be prohibited from transferring Petitioner outside the District of South Carolina; and (5) maintains jurisdiction over this matter.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

September 29, 2026
Charleston, South Carolina